**Harry A. SMITH, Jr., Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health & Human Services, Defendant.**

**Civ. A. No. 88–255 Erie.**

United States District Court, W.D. Pennsylvania.

June 28, 1989.

Terry Toomey, Meadville, Pa., for plaintiff.

Albert W. Schollaert, Asst. U.S. Atty., Pittsburgh, Pa., for defendant.

---

## OPINION

GERALD J. WEBER, District Judge.

Don Quixote charged windmills. Lear raged at a storm. This Court has often written of the obvious injustice done to the ill and disabled by the Social Security Administration. All of us dreamers have had about the same measure of success.

Harry Smith, Jr. is now 33 years old and, though not afflicted with any physical impairment, has suffered from early adolescence with a severe mental and emotional impairment. Although every treating psychiatrist and psychologist indicates that plaintiff is incapable of employment, and one treating psychiatrist strongly insists that the stress of employment will seriously increase plaintiff's risk for suicide, the Social Security Administration in its inexhaustible capacity for the absurd has held otherwise. Plaintiff has appealed and after a review of the record and briefs, we conclude the Secretary's decision must be reversed—emphatically.

Although plaintiff's condition has been given many different labels by different mental health professionals, all are agreed that it is characterized by depression, extreme isolation, social immaturity, and recurrent panic attacks. Plaintiff has extreme difficulty interacting with people, to the point that he rarely leaves his father's house. He attempted suicide at age 16 and admits continuing thoughts of self destruction.

A brief review of the medical reports may highlight our sense of outrage at the Secretary's decision. In September, 1985, a psychologist, George DeLong, prepared an extensive and detailed evaluation of the plaintiff. He reported that the plaintiff was "a compulsive and meticulous personality who is seriously depressed, anxious, fearful and preoccupied with fantasy. Additionally, Harry is quite socially isolated and is 'sensitive' in the extreme." DeLong concluded that plaintiff suffered multiple disorders, was chronically mentally ill and required extended residential and outpatient psychotherapy.

In February, 1987, a treating psychologist, James Fox, reported the following:

It continues to be our opinion at the Mental Health Center that Mr. Smith is disabled by his disorder, i.e., his agoraphobic symptoms make it painful for him to even leave the house. His adaptation to stressful circumstances is extremely poor, e.g., he has immense problems interacting with persons in authority, responding to criticism, following instructions, etc.

Depressive symptoms are also a part of the picture for Mr. Smith, and this would interfere with his ability to maintain a regular work schedule, perform at a predictable rate, respond to criticism or absorb the feelings of rejection and failure that would accompany loss of a job for the aforementioned reasons. He has a history of hospitalization for attempted suicide and is at high risk for further such behavior; placing him in a situation that he cannot manage would heighten that risk.

In September, 1987, a treating psychiatrist, Dr. Yohe, spoke directly to the issue of employment. He stated that plaintiff would have:

difficulty engaging in interpersonal relationships including those that would be a normal part of working. I think that the patient would have great difficulty interacting with fellow workers and, in particular, interacting with supervisors. I think that even in a simple job, requiring unskilled labor, the patient would have great difficulty functioning adequately. When forced into social situations, the patient's concentration is poor, and he is unable to carry out tasks appropriately.

I think that the patient should be considered totally and permanently disabled.

In reaching his decision, the ALJ relied on a time-honored agency technique best described as selective recall. For example, the ALJ notes that plaintiff is able to go shopping, but ignores the fact that such trips are very infrequent, that plaintiff must be accompanied by a family member, and that plaintiff has often experienced panic attacks which force him to flee the

store and wait in the car. The ALJ notes that plaintiff was able to fly to California and Arizona to visit relatives, and though two plane rides hardly counter the extensive medical evidence present, the ALJ also fails to note that these trips were not vacation jaunts, but rather the shunting off of an unwanted and expensive dependent. The ALJ notes that plaintiff looked for work but fails to note that plaintiff's only two attempts at work ended within weeks because plaintiff could not function.

Finally, the Vocational Expert (VE) testified that there are low stress jobs which involve minimal interaction with co-workers, supervisors and the public. However, the VE also stated that if plaintiff were essentially incapable of social functioning, there would be no jobs available to him. Medical evidence indicating that plaintiff's fear is so overwhelming that he rarely leaves the house is a pretty clear indication that plaintiff can't work. Plaintiff's doctors could see this but the Secretary is blind to it. The decision of the Secretary is unsupported by any evidence of record and will therefore be reversed.

## ORDER

AND NOW, in accord with this accompanying Opinion, it is hereby ORDERED that the decision of the Secretary is REVERSED and benefits are AWARDED to plaintiff.

The Clerk is DIRECTED to mark this matter CLOSED.

So ORDERED.